IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Regina M. Rodriguez

Civil Action No. 20-cv-02092-RMR-KMT

RALPH D. ROUND,

    Plaintiff,

v.

UNITED STATES DEPARTMENT OF AGRICULTURE, FOREST SERVICE, et al.

    Defendants.

---

## ORDER ON MOTIONS TO DISMISS

---

This matter is before the Court on the Federal Defendants'[1] Motion to Dismiss Plaintiff's Amended Complaint, ECF 67, and on the Colorado Defendants'[2] Motion to Dismiss the Amended Complaint, ECF 72. The Plaintiff has also filed a Motion Requesting Oral Argument on the Federal Defendants' Motion to Dismiss, ECF 69. The motions to dismiss have been fully briefed by the parties, and oral argument would not materially assist the Court. Plaintiff's request for oral argument is **DENIED.**

---

[1] The Plaintiff's Amended Complaint names the following Federal Government Defendants: United States Department of Agriculture, Forest Service; Sonny Perdue, individually and as Chief of the United States Department of Agriculture, Forest Service; Jennifer Eberlien, individually and as Acting Regional Forester for the Rocky Mountain Region; Diana Trujillo, individually and as Forest and Grasslands Supervisor for the Pike and San Isabel National Forest & Cimarron and Comanche National Grasslands; and John Linn, individually and as Comanche National Grassland Range Staff.

[2] The Plaintiff's Amended Complaint names the following Colorado Defendants: Colorado Parks and Wildlife Commission; and Steve Keefer, individually and as District Wildlife Manager for Colorado Parks & Wildlife District 242.

In this case, the Plaintiff asks the court to determine the contours of governmental authority over grazing allotments located on National Grasslands. The Plaintiff asks the Court to declare that he has ownership rights over the Allotments and that the Defendants are interfering with his ownership rights.

The Plaintiff's action is a quiet title dispute with the United States. Because the Plaintiff has not invoked the Quiet Title Act (QTA), and because the QTA is the exclusive means by which a citizen may quiet title against the adverse interest of the United States, this Court does not have jurisdiction over the instant action. For the reasons set forth herein, the Defendants' motions to dismiss are **GRANTED.**

## I.    BACKGROUND

This case centers on two livestock grazing allotments contained within the Comanche National Grassland: the Rock Fall Allotment and Crooked Arroyo Allotment (collectively, "the Allotments"). The Plaintiff, Ralph D. Round ("Mr. Round" or "Plaintiff") is a cattle rancher in Southeast Colorado who claims to have an ownership interest in the Allotments resulting from a series of legislative grants to his ancestors in the mid- to late-1800s. Mr. Round brought this action against both federal and state government entities and employees, who he contends are interfering with his ownership rights in the Allotments.

### A.  Mr. Round's Alleged Rights

Mr. Round alleges that his ancestors first homesteaded the Allotments in 1891. This land, Mr. Round alleges, was part of the Resettlement Projects under the Bankhead-Jones Farm Tenant Act (BJFTA) and the Farmers Home Administration Act (FHAA). Mr. Round alleges that, pursuant to the BJFTA and the FHAA, he has "valid existing rights" in the Allotments. ECF 66 ¶ 72. Mr. Round specifically argues that he is the "surface owner for all agricultural and ranching purposes" of the land area enclosed within the Rock Fall Allotment and the Crooked Arroyo Allotment. These Allotments, Mr. Round argues, "are a fee-title property right of the Plaintiff." *Id.* ¶ 58.

### B.  Alleged Destruction of the Allotments and Mr. Round's Response

Mr. Round argues that the actions of the Defendants in this case have led to the destruction of the Allotments and have interfered with his ability to exercise his ownership rights in the Allotments. Specifically, Mr. Round argues that hunters allowed onto the Allotments by the Defendants have caused significant damage to his real and personal property. These hunters have allegedly blocked access to water supplies for his cattle, causing his cattle to die for lack of water. Mr. Round also alleges that cattle have died each year from being hit by hunters' vehicles and from dust pneumonia caused by the hunters driving up and down the Allotment roads during the hunting season. Mr. Round further alleges that hunters have destroyed fences and created new roads on the Allotments. *Id.* ¶¶ 74-76.

In response to the alleged destruction, Mr. Round began placing "Keep Out" signs close to his water tanks to protect his livestock and private water rights. Plaintiff alleges

that these signs were removed or destroyed by the Defendants. Mr. Round contends that, as the Allotment owner and the owner of the water rights on his Grazing Allotments, he has the right to place "Keep Out" signs close to the watering locations. He alleges that he also "has the right to place 'Keep Out' signs around the entire Grazing Allotment to prevent further destruction of his private property." *Id.* ¶ 83.

### C. Ownership Dispute with U.S. Forest Services

Mr. Round complained about this destruction to U.S. Forest Services ("USFS"). Mr. Round alleges that USFS told him that National Grasslands "are 'public lands' and the hunters have just as much a right to be there as the Rounds." *Id*. ¶ 80. In response, in September 2019, Mr. Round sent a letter to USFS claiming that he has "full ownership of all surface rights" on the Grazing Allotments. Because National Grasslands originated from Resettlement Projects, Mr. Round argued, all the Round family rights "still stand on the land." ECF 66 p. 37-38.

In response to Mr. Round's letter, USFS disputed any such ownership interest. USFS contended that, while "the majority of the lands in the National Grasslands were originally patented out of Federal ownership under various authorities, including laws such as the Homestead Act and the Stock-Raising Homestead Act, the land was all subsequently re-acquired by the United States and became federal property again." ECF 66 p. 42. USFS explained that "[t]he property rights of the United States in these lands are defined by the deeds through which the United States re-acquired the land. Absent specific reservations of property rights in the deed by the party that transferred the land to the United States, the United States acquired unrestricted fee title to the land,

4

extinguishing all previously-existing non-Federal property rights in the land." *Id.* With regard to Mr. Round's alleged rights, USFS explained that "[t]o date, there is no available evidence of deed reservations that would have reserved 'surface rights,' or any other private property rights in the federal property within the grazing allotment where you have a permit, and therefore the Forest Service administers the property as it would any other federal property within the National Forest System." *Id.*

USFS thus does not dispute that Mr. Round's ancestors may have had certain rights to the Allotments in the past, but it argues that any such rights were extinguished when the lands were re-acquired by the United States and included in the National Grasslands. Instead, the USFS asserts that because the Allotments are on National Grassland, and because the United States has an unrestricted fee title to the land, the Secretary of Agriculture has the authority to administer and regulate the land under 16 U.S.C. § 55, including allowing hunting on any National Grasslands.

USFS "recognize[d] that reasonable steps may need to be taken to protect livestock water developments from damage," and indicated that it was "willing discuss such measures with [Round]." However, USFS stated, "you may not erect signs or fencing or other steps to prevent public access to federal land without Forest Service authorization." *Id.*

## II.    RELIEF REQUESTED

Mr. Round disagrees that the United States has ownership over the Allotments, as set forth in the USFS letter. Mr. Round contends that he owns the allotments, and that he

therefore is entitled to place "Keep Out" signs on the property. Mr. Round specifically asks the Court to make the following findings:

- Declare that "the Plaintiff is the owner of the property rights included in the surface estate referred to as the Grazing Allotments;" ECF 66 ¶ 109

- Declare that, "as owner of the Grazing Allotment property right[,] that Plaintiff is entitled to continue to graze cattle on the Grazing Allotments to the full extent of the rights associated thereto," and that "Plaintiff be allowed to protect his valid existing property rights in the Grazing Allotments by placing Keep Out signs not only around his stock water locations, but around the entire Grazing Allotments;" *id.* ¶ 110

- Declare that Plaintiff's "vested surface estate property rights, water rights, grazing rights and all other rights of use as granted by Congress [] are 'valid existing rights,' and under NFMA any further regulatory or administrative actions taken by the Forest Service are subject to those rights." *Id.* ¶114.

Mr. Round also asks for injunctive relief barring the Defendants from interfering with his access to and ability to protect his property.

## III.   APPLICABLE LAW

As courts of limited jurisdiction, federal courts are empowered to hear only those cases authorized by Article III of the Constitution that have been entrusted to them under a jurisdictional grant by Congress. *Bender v. Williamsport Area School Dist.*, 106 S.Ct. 1326, 1331 (1986); *Henry v. Office of Thrift Supervision*, 43 F.3d 507, 511 (10th Cir.1994). The party seeking to invoke the jurisdiction of a federal court has the burden of proving the court's jurisdiction. *Henry*, 43 F.3d at 512; *Celli v. Shoell*, 40 F.3d 324, 327 (10th Cir.1994).

It is "axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction." *United States v. Mitchell*, 103

6

S.Ct. 2961, 2966 (1983) (citations omitted). As with any jurisdictional issue, the party bringing suit against the United States bears the burden of proving that sovereign immunity has been waived. *See James v. United States*, 970 F.2d 750, 753 (10th Cir.1992). A waiver of sovereign immunity cannot be implied and must be unequivocally expressed. *See United States v. Nordic Vill., Inc.*, 112 S.Ct. 1011, 1014 (1992); *United States v. Murdock Mach. & Eng'g Co. of Utah*, 81 F.3d 922, 930 (10th Cir.1996). The United States' agencies also have sovereign immunity absent a waiver. *See FDIC v. Meyer*, 114 S.Ct. 996, 1000 (1994) ("Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit"). When the United States consents to be sued, the terms of its waiver of sovereign immunity define the extent of the court's jurisdiction. *Id*.

## IV.    ANALYSIS

The Defendants in this action seek dismissal pursuant to Federal Rule of Civil Procedure 12(b)(1), arguing that this Court lacks subject matter jurisdiction. The Federal Defendants argue that the Plaintiff's claim must have been brought pursuant to the Quiet Title Act ("QTA"). Any such claim, the Federal Defendants argue, must have invoked a waiver of sovereign immunity under the QTA and must have been brought against the United States. Because the Plaintiff failed to invoke the QTA, the Federal Defendants contend that the matter must be dismissed. The Colorado Defendants have joined the Federal Defendants' motion and have filed a separate motion arguing that the Court lacks jurisdiction over the Plaintiff's claims against them under the Eleventh Amendment.

7

A. **The Quiet Title Act Provides the Exclusive Means to Challenge the United States' Title to Real Property**

The Quiet Title Act provides a limited waiver of the sovereign immunity of the United States. It permits the United States to be named as a party defendant in a civil action "to adjudicate a disputed title to real property in which the United States claims an interest, other than a security interest or water rights." 28 U.S.C. § 2409a(a). Congressional waivers of the sovereign immunity of the United States "must be strictly observed and exceptions thereto are not to be implied." *Lehman v. Nakshian*, 101 S.Ct. 2698, 2702 (1981) (quotation and citation omitted). In *Block v. North Dakota*, 103 S.Ct. 1811, 1819 (1983), the Supreme Court held that "Congress intended the QTA to provide the *exclusive means* by which adverse claimants could challenge the United States' title to real property." (emphasis added). The QTA applies even "where the plaintiff claims an estate less than a fee simple ... [such as] an easement." *McKay v. United States*, 516 F.3d 848, 850 (10th Cir. 2008). The Plaintiff here challenges the United States' title to the Allotments, and the QTA thus provides the sole jurisdictional basis for such a suit.

Mr. Round seeks to avoid the QTA requirements by suggesting that this is not an action to quiet title, but that it is instead a matter of first impression in which the Court must determine whether "the private property rights in a grazing allotment within a national grassland's administrative boundaries [are] the kind of 'valid existing rights' the United States Forest Service [] is 'subject to' and thus has no warrant to override." ECF 68 pp. 1-2. This argument is unpersuasive for two reasons: First, it is belied by Mr. Round's own request for relief, in which he specifically seeks a ruling that "**Plaintiff is the**

**owner** of the property rights included in the surface estate referred to as the Grazing Allotments." ECF 66 ¶ 110 (emphasis added). The Quiet Title Act is thus directly—and exclusively—applicable here.

Second, the question presented by Mr. Round would still require the Court to adjudicate whether he had private property rights in the grazing allotment before it could address his arguments that the rights were valid existing rights that USFS could not override. Courts relying on *Block*—and considering the jurisdictional limits of the QTA—have specifically rejected such "artful pleading" as a means of circumventing the QTA.

In *Rosette, Inc. v. United States*, 141 F.3d 1394 (10th Cir. 1998), the Tenth Circuit considered a plaintiff's request for a declaration of the United States' authority to regulate heat in the water from state-permitted wells. Because the United States purported to hold the authority to regulate geothermal resources, and because it exercised that authority, the plaintiff argued that his lawsuit was a defense to government agency action and not an action to quiet title. The court rejected this argument, finding that although the plaintiff "may characterize its lawsuit as a declaratory judgment action, [] it nonetheless seeks a declaration as to the ownerships of the geothermal resources." *Id.* at 1396. The Tenth Circuit held that the plaintiff's request "for declaratory relief leads directly back to the question of title, and as such, is inextricably linked to that question…[T]he Quiet Title Act [therefore] controls [plaintiff's] lawsuit." *Id.*

In *Hat Ranch, Inc. v. Babbitt*, 932 F. Supp. 1 (D.D.C. 1995), the District Court for the District of Columbia considered a plaintiff's request for a declaration of its entitlement

9

to level grazing fees on disputed federal land. The federal government defendant in *Hat Ranch* argued that the action was an action to quiet title that should have been brought pursuant to the QTA. The plaintiff argued that it did not actually seek to quiet title, but that it sought only a declaration of its entitlement to levy grazing fees. The court in *Hat Ranch* rejected the plaintiff's argument and found that the claim should have been brought under the QTA. The court specifically noted the plaintiff's concession that "the Court may have to decide who has title to the land before it can decide who may levy grazing fees," and explained that "[l]itigants cannot circumvent the provisions of the Act by drawing fine distinctions between the incidents of land ownership and ownership itself." *Id.*

As in *Rosette* and *Hat Ranch*, the Plaintiff's request here is inextricably linked to the question of title, and the QTA therefore controls Plaintiff's suit. Because the Plaintiff did not plead waiver under the QTA, this court lacks jurisdiction over this action. *See Burlison v. United States*, 533 F.3d 419, 424 (6th Cir.2008) ("The [Quiet Title] Act provides the exclusive basis for jurisdiction over suits challenging whether the United States holds title to real property."). [3]

---

[3] The Plaintiff's argument that he need not plead waiver under the QTA because he has pleaded waiver under the APA misses the point. The issue here is that Plaintiff's claim must have been brought pursuant to the QTA, and therefore the QTA's waiver of sovereign immunity is the only waiver applicable to this claim. Invoking the APA waiver for this quiet title action ignores clearly established authority that the QTA is the exclusive means by which an individual may challenge the United States' title to real property. In *Block*, the Supreme Court explicitly rejected the approach taken by the Plaintiff here, explaining "If we were to allow claimants to try the Federal Government's title to land under an officer's-suit theory, the Indian lands exception to the QTA would be rendered nugatory. The United States could also be dispossessed of the disputed property without being afforded the option of paying damages, thereby thwarting the congressional intent to avoid disruptions of costly federal activities. Finally, and most relevantly

For this reason, the Federal Defendants' motion to dismiss must be **GRANTED**, and the Amended Complaint must be **DISMISSED without prejudice** for lack of subject matter jurisdiction.

### B.  The United States is the Only Proper Defendant Under the QTA

The Federal Defendants secondarily argue that because there is no waiver of sovereign immunity against them, claims against the named Federal Defendants in the Plaintiff's Amended Complaint must be dismissed. In its opposition to the Federal Defendant's motion to dismiss, the Plaintiff admits that "it would be true that the United States is the only proper defendant IF this were an action brought under the [QTA]." ECF 68 p. 2. For the reasons set forth, *supra*, the Court finds that this action should have been brought under the QTA. The only proper defendant to such an action would therefore be the United States. For this reason, claims against defendants other than the United States—including both the Federal and Colorado Defendants—must be dismissed.[4]

### V.    CONCLUSION

For the reasons set forth herein, the Defendants' Motions to Dismiss for Lack of Jurisdiction, at ECF Nos. 67 and 72, are **GRANTED**. The Plaintiff's Request for Oral Argument, ECF 69, is **DENIED.** The Amended Complaint is **DISMISSED without**

---

to the present case, the QTA's twelve-year statute of limitations, the one point on which the Executive Branch was most insistent, could be avoided, and, contrary to the wish of Congress, an unlimited number of suits involving stale claims might be instituted." *Block*, 461 U.S. at 285.

[4] Because the Court finds that Plaintiff's action invokes the QTA and thus may only be brought against the United States, it need not consider the Colorado Defendant's argument regarding its entitlement to immunity under the Eleventh Amendment.

**prejudice.** Plaintiff shall have **sixty (60) days** from the entry of this order to file an Amended Complaint, should he choose to do so.

DATED:  December 1, 2021

BY THE COURT:

_____
REGINA M. RODRIGUEZ
United States District Judge

12